# UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF OHIO

In Re: )
) **JUDGE RICHARD L. SPEER**
Kristin Tammarine )
) Case No. 08-31145
Debtor(s) )
)

## DECISION AND ORDER

This cause comes before the Court on the Objection of the Debtor, Kristin Tammarine, to Claim No. 2 filed by the Creditor/Claimant, Christine Urban. (Doc. No. 46). An evidentiary hearing was held to determine the validity of the claim. At the conclusion of the hearing, the Court took the matter under advisement so as to afford time to give the arguments raised by the Parties further consideration. The Court has now had this opportunity, and finds, for the reasons set forth herein, that the Debtor's Objection to Claim No. 2 should be Sustained.

## FACTS

In 2004, the Debtor, Kristin Tammarine (hereinafter the "Debtor"), met the Claimant, Christine Urban (hereinafter "Urban"), at a boxing event. The Debtor, a real estate agent, was at the event to promote her business at the invitation of several local lenders. Urban was speaking with another real estate agent at the event and indicated that she was looking for a realtor when she met the Debtor.

About a year later, Urban contacted the Debtor concerning the purchase of a home. The Debtor then assisted Urban in finding and purchasing her first home. A short while later, Urban contacted the Debtor again and indicated that she wished to sell her home. The Debtor assisted

In re: Kristin Tammarine
Case No. 08-31145

Urban through that process as well. Throughout the course of these events, the Debtor and Urban became friends.

On March 21, 2007, Urban transferred $12,000.00 to the Debtor. The nature of that transfer is at issue in this case. Urban contends that the transfer was a loan to a close friend which she expected would be repaid. The Debtor, on the other hand, contends that the transfer was not a loan, but was instead a business investment and sale. No direct agreement, however, was executed by the Parties concerning the exact nature of the transaction.

## PROCEDURAL BACKGROUND

On March 14, 2008, the Debtor filed a voluntary petition in this Court for relief under Chapter 7 of the United States Bankruptcy Code. (Doc. No. 1). In her bankruptcy filing, the Debtor listed Urban as a creditor with an undisputed claim in the amount of $11,000.00. Also, as a part of her filing, the Debtor disclosed a pending lawsuit between herself and Urban, involving the claim in question in this proceeding.

Later, after the United States Trustee filed a Motion to Dismiss under § 707(b), the Debtor voluntarily converted her case to one under Chapter 13 of the Code. As a part of the conversion, the Debtor submitted updated financial information to the Court. (Doc. No. 36). This updated financial information, filed on two occasions, again disclosed the lawsuit pending between the Parties and again listed Urban as a creditor with an undisputed claim in the amount of $11,000.00. (Doc. No. 41).

On August 8, 2008, the Debtor filed a Chapter 13 Plan which proposed to pay her unsecured, nonpriority creditors a 100% distribution on their claims. (Doc. No. 38). On August 26, 2008, Urban filed a proof of claim in the amount of $11,000.00. Urban listed the basis for the claim as "Money

Page 2

In re: Kristin Tammarine
Case No. 08-31145

Loaned." On September 15, 2008, the Debtor filed her Objection to Claim No. 2 filed by the Claimant, Christine Urban. (Doc. No. 46). The Debtor also amended her proposed plan of reorganization, seeking to account for the disallowance of Urban's claim. (Doc. No. 44).

## DISCUSSION

Before this Court is the Debtor's Objection to Claim No. 2 filed by the Claimant, Christine Urban. A determination concerning the allowance or disallowance of a claim against the estate is deemed to be a "core proceeding" over which this Court has been conferred with the jurisdictional authority to enter final orders and judgments. 28 U.S.C. § 157(b)(2)(B).

The determination of claims against the bankruptcy estate is a central function of the bankruptcy courts. 28 U.S.C. § 157(b)(2)(B). Although not cited by Urban, her objection to the Debtor's proof of claim substantively arises from 11 U.S.C. § 502(b)(1) which requires a court to disallow a claim if "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law . . . ." Regarding this ground for disallowance, the Parties do not actually disagree that there was an enforceable agreement between them. Rather, the issue is how to classify the agreement.

Urban argues that the $12,000.00 she transferred to the Debtor was a loan between two close friends. It is the position of the Debtor, however, that the $12,000.00 was not a loan, but rather a sale and investment. This distinction is key: A 'loan' implies an advance of money with an absolute promise to repay. *See, e.g., Bankers Mortg. Co. v. U. S.*, 423 F.2d 73, 80-81 (5th Cir. 1970). By contrast, a sale or business investment will not normally entail any absolute obligation to repay. Rather, in a business transaction, any obligation to repay the sums advanced will be contingent on the occurrence of an event subsequent such as whether the business earns a profit. *See* 9 Williston on Contracts § 20:17 (4th ed.). Similarly, a sale involves no absolute obligation of repayment, but is

Page 3

In re: Kristin Tammarine
Case No. 08-31145

instead characterized by an exchange of property or services in exchange for a payment or other valuable consideration. *See* Black's Law Dictionary 1337 (6th ed. 1990).

Besides her testimony, in which she explained that she understood her transaction with the Debtor to be a loan, Urban relied on two pieces of corroborating evidence to support her position: (1) e-mails exchanged between her and the Debtor; and (2) documents filed by the Debtor in her bankruptcy. The e-mail page submitted into evidence, first dated December 23, 2007, contained multiple e-mails exchanged between the Parties. (Cl. Ex. No. 4). One such e-mail concerns $1,000.00 that Keith Tammarine, the Debtor's husband, paid to Urban. This e-mail states that the Debtor "has been working very hard to try to get some money to send [Urban]" and that "to help things for now" Keith Tammarine would send Urban "a check for what [he] can." *Id*. A response to this e-mail from Urban discusses "payments" and a "payment plan and that Urban would like a "timeline" concerning these payments because she "is in need of money." *Id*. The Debtor then responded, stating "Here is the plan Christine, when I have money I will send it. When I don't I won't." *Id*. The Debtor, in her testimony, did not attempt to dispute the content of these e-mails.

As further evidence of the existence of a loan, Urban also offered to the Court a composite of documents filed in the Debtor's bankruptcy. (Cl. Ex. No. 1). Urban points out that in these filings, the Debtor listed her at all the times as a creditor with an undisputed claim. (Cl. Ex. No. 1). Urban also points out that the Debtor's original Chapter 13 plan accounted for Urban as a creditor for which Urban would receive 100% on her claim. (Cl. Ex. No. 1).

Looking at this evidence, the Court agrees that it is indicative of a loan agreement between the Parties. First, a reasonable reading of the language in the Parties' e-mails would tend to indicate an intent by the Debtor to repay Urban all of the $12,000.00 that Urban had advanced to her. For example, language such as "Here is the plan Christine, when I have money I will send it. When I don't I won't" is entirely consistent with an understanding between the Parties that the Debtor had

Page 4

In re: Kristin Tammarine
Case No. 08-31145

an absolute obligation to repay Urban. Furthermore, the fact that the Debtor's husband, Keith Tammerine, actually paid Urban $1,000.00 is entirely consistent with a loan agreement. Finally, as Urban correctly points out, the Debtor's acknowledgment of Urban's claim, both in her bankruptcy schedules and in her initial Chapter 13 plan, is probative evidence of its validity. *See In re Burkett*, 329 B.R. 820, 829 (Bankr. S.D. Ohio 2005); *In re Kemmer*, 315 B.R. 706, 716 (Bankr. E.D.Tenn. 2004).

Not all evidence, however, bends in Urban's favor. First, unlike above, an e-mail correspondence between the Parties tends to suggest that the transaction between them was an investment. This e-mail, titled: "Subject: Investment Monies/LLC," and sent by the Debtor on March 21, 2007, states:

> This email is to serve as written notice that Christine Urban is investing $12,000 capital for the purpose of buying and selling investment properties. Christine shall be reimbursed the initial capital investment off the top of the profits from the first transaction. We shall both keep track of expenses for tax and accounting purposes.

(Cl. Ex. No. 3). This language indicates to the Court that the transaction between the Parties was meant to be a business investment, not a personal loan between two close friends. In sum, this e-mail, describing a capital contribution and reimbursements from profit, can only be taken to mean that the Debtor was only obligated to pay Urban once the Parties' transaction became profitable; nothing in the e-mail indicates an absolute obligation to repay.

In further support of her position that the Parties' transaction was not a loan, the Debtor presented as evidence a list of 'short sale leads' she had provided to Urban. Also, as evidence, the Debtor introduced a flyer that she had prepared for Urban so as to enable Urban to solicit possible sale leads. In further rebuttal to the existence of a loan, the Debtor also provided the following explanatory testimony.

Page 5

In re: Kristin Tammarine
Case No. 08-31145

First, concerning the $1,000.00 transferred by Keith Tammarine to Urban, the Debtor testified that she did not authorize the transfer of that money, and that her husband made the transfer without actually understanding the nature of the Parties' transaction. The Debtor also testified that, contrary to how a loan would have been handled, she deposited Urban's advance of $12,000.00 in a business account and paid income taxes on the receipt of that money. Besides this testimony, Debtor's counsel addressed the disclosure of Urban as a creditor in the papers filed with the bankruptcy court, explaining that it was always the Debtor's position that she did not owe Urban any money and that it was his fault for not properly preparing the papers filed by the Debtor in her bankruptcy case.

In considering the Debtor's evidence, the Court does not ascribe much weight, alone, to the testimony provided by the Debtor. The same is true of the explanation provided by the Debtor's attorney. This evidence is self-serving, and thus must be viewed from that perspective. However, the documentary evidence provided by the Debtor goes far in corroborating her position.

First, it was acknowledged at the Hearing that the Debtor was experienced in the real estate business and that Urban sought, with some help from the Debtor, to pursue a like business path. Yet, no credible answer was offered to this simple question: If the transaction between the Parties was a loan, why did the Debtor, after the advance of the funds, provide to Urban a list of 'short sale leads' and a flyer to solicit sales? The Court also finds very telling the e-mail sent to Urban by the Debtor. This e-mail, describing Urban's advance of $12,000.00 as a business investment, was executed on March 21, 2007, the same date of the Parties' transaction. A logical inference thus arises that this e-mail, as opposed to the e-mails relied upon by Urban which were not executed until December 23, 2007, more accurately describes the nature of the Parties' transaction.

Page 6

In re: Kristin Tammarine
Case No. 08-31145

In considering these points in light of all the evidence, the Court is convinced that each Party subjectively believes their account of events. On balance, however, the Court, after considering all the competing evidence, is not left with any firm conviction that Urban intended to invest or buy leads from the Debtor when she advanced $12,000.00 to the Debtor. However, nor is the Court left with any firm conviction that the transaction between the Parties created an absolute obligation on the part of the Debtor to pay Urban. Instead, it is this Court's conclusion that the evidence in this matter stands in equipoise. Given this finding, however, the law requires that judgment be entered in the Debtor's favor.

Once an objection to a proof of claim is properly interposed and supported, the claimant bears the ultimate burden of persuasion to prove the validity of the claim by a preponderance of the evidence.[1] In its simplest form, preponderance of the evidence means "more likely than not." *Gafford v. General Elec. Co.*, 997 F.2d 150, 160 (6th Cir.1993). Consequently, as is the situation here, where two opposing parties have equally established their positions, the plaintiff is not entitled to ruling in their favor. In the end, this matter illustrates that when a party attempts to establish the existence of an agreement, without having the written instrument evidencing the agreement, they will be

---

[1] It is well-established that the burden of proving the existence of a debt is normally placed upon the party attempting to establish its existence. See, e.g., *In re Allegheny Intern., Inc.*, 954 F.2d 167, 173-74 (3rd Cir. 1992). Simply put, it is for the claimant to prove his claim, not for the objector to disprove it. *Matter of Interco Inc.*, 211 B.R. 667, 677 (Bankr. E.D.Mo. 1997). A caveat: the Supreme Court of the United States in *Raleigh v. Illinois Department of Revenue* held that "the burden of proof is an essential element of the claim itself; one who asserts a claim is entitled to the burden of proof that normally comes with it." 530 U.S. 15, 21, 120 S. Ct. 1951, 1955, 147 L. Ed. 2d 13, 20 (2000). Thus, a claimant will not have the burden of proof if applicable nonbankruptcy law provides otherwise. In this case, however, there is nothing to suggest that applicable law, presumably Ohio law since the Parties' transaction occurred in Ohio, would not allocate upon Urban the burden of establishing the existence of a loan. 42 OHIO JUR. 3D Evidence and Witnesses § 95.

Page 7

In re: Kristin Tammarine
Case No. 08-31145

placed at a disadvantage when seeking to satisfy their evidentiary burden. In plain English, when an agreement is reached, get it in writing.

In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Decision.

Accordingly, it is

**ORDERED** that the Objection of the Debtor, Kristin Tammarine, to Claim No. 2 filed by the Creditor/Claimant, Christine Urban, be, and is hereby. SUSTAINED.

Dated: April 30, 2009

/s/ Richard L. Speer
Richard L. Speer
United States
Bankruptcy Judge

Page 8

A copy of the foregoing Decision and Order has been sent this 30th day of 2009 by ordinary U.S. Mail to the following:

Kristin J Tammarine
2069 Coe Ct.
Perrysburg, OH 43551


Abbey M. Flynn
520 Madison Ave.
Suite 405
Toledo, OH 43604


Joseph J Urenovitch
PO Box 2867
Whitehouse, OH 43571


Christine Urban
28 Sandbury Ct.
Holland, OH 43528


John P. Gustafson
316 N. Michigan St.
#501
Toledo, OH 43604